| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401 | |
| **Plaintiff:**<br>BFW DENVER LLC D/B/A BLANCHARD FAMILY WINES, a Colorado limited liability company<br><br>v.<br><br>**Defendant:**<br>ILLINOIS CASUALTY COMPANY, an Illinois corporation | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff:*<br>Ivan A. Sarkissian, #28817<br>Tyler M. Campbell, #51512<br>McConaughy & Sarkissian, P.C.<br>4725 S. Monaco Street, Suite 200<br>Denver, CO 80237<br>Telephone:   (303) 649-0999<br>Facsimile:    (303) 649-0990<br>isarkissian@mslawpc.com<br>tcampbell@mslawpc.com | Case Number: _____<br><br>Division: _____ |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, BFW Denver LLC d/b/a Blanchard Family Wines, by and through its attorneys, McConaughy & Sarkissian, Professional Corporation, hereby files this Complaint and Jury Demand and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, BFW Denver LLC d/b/a Blanchard Family Wines ("Plaintiff"), is a limited liability company with its principal place of business located at 1855 Blake Street, Suite 120, Denver, Colorado 80202.

2. Defendant, Illinois Casualty Company ("Defendant"), is an Illinois corporation engaged in the business of issuing insurance policies to Colorado insureds with a principal place of business located at 225 20th Street, Rock Island, Illinois 61201.

3. At all relevant times, Plaintiff operated a wine business at 15810 W. 6th Avenue, Golden, Colorado 80401 (the "Premises") insured by Defendant.

4. This Court has jurisdiction over this civil action pursuant to C.R.S. § 13-1-124(1)(a), (b), and (c) because the matter involves alleged breach of contract and other tortious acts concerning the insurance agreement reached between Plaintiff and Defendant, which should have provided coverage for the real property located in Jefferson County, Colorado.

5. Venue is proper in Jefferson County pursuant to C.R.C.P. 98(c)(4), as the services to be performed under the insurance contract were to be performed in Jefferson County.

## GENERAL ALLEGATIONS

6. Plaintiff entered into a lease agreement for the Premises, which required Plaintiff to maintain Comprehensive General Liability and Property Damage Insurance, while the landlord maintained insurance for the common areas of the property.

7. In seeking to satisfy these requirements, Plaintiff provided Defendant's agent, Crest Insurance, with its prior policy and certificates of insurance that reflected broader protections, including $100,000 in damage-to-rented-premises coverage without limitation to "fire only" and $1,000,000 in building coverage.

8. Plaintiff also provided Defendant's agent with its lease requirements, making clear that coverage consistent with those terms was required.

9. Based on these submissions, Defendant and its agent marketed the coverage as comprehensive businessowners insurance tailored to Plaintiff's operations.

10. Under the impression that the new Policy mirrored the previously provided policy and complied with the lease requirements, Plaintiff purchased a Businessowners Policy from Defendant, Policy No. BP50562 ("Policy"), effective February 18, 2025 through February 18, 2026.

11. Despite this inducement, Crest now contends the Policy materially restricted coverage compared to what had been represented.

12. Crest contends the Policy limited damage-to-rented-premises coverage to "fire only" and eliminated building coverage, even though Plaintiff never requested removal of those coverages.

13. Crest later admitted it did not review Plaintiff's lease until after Plaintiff submitted its claim.

14. On March 27, 2025, a water pipe owned by Plaintiff failed, discharging water throughout multiple areas of the Premises.

2

15. The discharge of water was unrelated to any freeze or thaw occurrence at the Premises.

16. The water loss caused significant damage to Plaintiff's covered property and fixtures, as well as damage to drywall and flooring in the tasting room, fermentation room, and restroom.

17. Plaintiff promptly reported the loss to Defendant. The claim was assigned Claim No. BP50709.

18. On March 31, 2025, Plaintiff retained Restore CO to provide emergency services. Restore CO performed drying, dehumidification, chemical treatment, and air movement to mitigate the water intrusion.

19. Restore CO issued invoices for $10,556.54, reflecting necessary mitigation services.

20. Plaintiff also retained OLP Construction to provide additional mitigation and repair services.

21. OLP performed services including drying, moisture testing, equipment monitoring, encapsulation and spray/scrub treatments, mechanical/electrical/plumbing ("MEP") repairs, and finish work.

22. OLP documented charges totaling $35,673.30 for remediation work that was necessary for the insured to resume its business at this location.

23. In total, Plaintiff incurred at least $46,229.84 in mitigation and remediation expenses, all of which were necessary to restore Plaintiff's property and/or resume business operations.

24. The Policy provides coverage for "direct physical loss of or damage to Covered Property" at the Premises caused by a Covered Cause of Loss.

25. Covered Property includes Plaintiff's business personal property, trade fixtures, and tenant improvements and betterments made at Plaintiff's expense but not legally removable.

26. The Policy also provides Additional Coverage for "Water Damage," which includes the cost to tear out and replace any part of the Covered Property to repair damage to the system or appliance from which water escapes.

27. The Policy further provides Additional Coverage for "Business Income" and "Extra Expense," covering losses sustained during suspension of operations and expenses incurred to minimize that suspension, including costs that "[r]epair or replace any property."

28. The Policy's additional insured endorsement further extends coverage to any person or organization as agreed in a written contract with respect to liability caused in whole or in part by the insureds' acts or omissions.

3

29. Despite these explicit Policy provisions, Defendant issued a denial letter dated April 2, 2025, refusing to provide coverage for any of the above-described losses, besides $14,920.59 for 30 days of business income losses, previously paid on May 19, 2025, and closed the file.

30. In that letter, Defendant acknowledged Plaintiff reported water damage to drywall and flooring, but concluded there was no coverage because Plaintiff had not installed those items and because the lease made them the landlord's property.

31. Defendant further stated that Plaintiff's equipment purchase agreement from a prior tenant did not include drywall or flooring.

32. Defendant selectively quoted Policy provisions regarding Covered Property but ignored those covering Plaintiff's fixtures, trade fixtures, tenant improvements, and business personal property.

33. Defendant also ignored the Policy's coverage for Water Damage, Business Income, and Extra Expense, all of which applied to Plaintiff's incurred costs.

34. Plaintiff continued to provide Defendant with documentation, including the bill of sale confirming Plaintiff's ownership of the filtration system and fixtures, as well as invoices itemizing covered mitigation expenses.

35. Plaintiff also notified Defendant that its landlord had demanded repairs to the Premises and threatened litigation against Plaintiff.

36. These landlord demands triggered the Policy's $100,000 coverage for "Damage to Premises Rented to You."

37. Nevertheless, Defendant refused to honor that coverage, claiming it did not apply.

38. On July 21, 2025, Defendant's agent issued a letter reaffirming denial, contending that drywall and flooring were not covered, that Extra Expense coverage did not apply, and that landlord demands did not create coverage obligations.

39. Defendant's agent further asserted that Plaintiff had not provided documentation of extra expenses incurred during the period of restoration, despite Plaintiff's submission of invoices and line-item breakdowns.

40. Defendant's July 21 letter repeated positions contrary to the Policy's express provisions and Plaintiff's submitted evidence, and again denied benefits owed.

41. Defendant's investigation was neither reasonable nor adequate. Defendant relied on selective lease language and Plaintiff's statements out of context, ignored evidence of ownership, and disregarded invoices showing Plaintiff incurred covered mitigation and remediation costs.

4

42. Defendant also disregarded Colorado law requiring insurers to construe policies consistent with their plain meaning and to resolve ambiguities in favor of coverage.

43. Defendant's denial of Plaintiff's claim was unreasonable.

44. Defendant's denial lacked a reasonable basis in fact or law.

45. As a direct result of Defendant's denial, Plaintiff has been forced to bear expenses exceeding $46,229.84, has lost business income, and remains exposed to landlord claims, all of which should have been covered under the Policy.

46. The Policy was marketed and sold to Plaintiff as comprehensive businessowners coverage tailored for food and beverage operations, including wine businesses such as Plaintiff's.

47. Plaintiff paid all required premiums and reasonably expected Defendant would provide protection against risks such as sudden water discharge and resulting business interruption.

48. Defendant owed Plaintiff duties under Colorado law to promptly investigate, fairly evaluate, and pay covered claims.

49. Defendant also owed a duty of good faith and fair dealing, requiring it to place Plaintiff's interests on equal footing with its own in evaluating claims.

50. Instead, Defendant placed its own financial interests above Plaintiff's by construing Policy provisions in the narrowest possible way, disregarding evidence of coverage, and closing its file without fully considering Plaintiff's losses.

51. Plaintiff was forced to mitigate damages quickly and at great expense to prevent further harm to its property and operations, incurring substantial out-of-pocket costs that Defendant should have reimbursed.

52. Defendant's refusal to acknowledge the applicability of Business Income and Extra Expense coverage left Plaintiff without support during the period when its operations were interrupted and its business was exposed to further losses.

53. Defendant's failure to honor the "Damage to Premises Rented to You" coverage deprived Plaintiff of protection from landlord demands and potential litigation, coverage Plaintiff specifically purchased to guard against such exposures.

54. As a consequence of Defendant's denial, Plaintiff has not only suffered unreimbursed expenses and lost business income, but has also faced uncertainty with respect to its relationship with the landlord and its continued tenancy.

55. Judicial intervention is required to declare the parties' rights and obligations under the Policy, to compel Defendant to provide coverage, and to compensate Plaintiff for damages caused by Defendant's breach of contract and bad faith conduct.

## FIRST CLAIM FOR RELIEF
(Declaratory Relief)

56. Plaintiff incorporates paragraphs 1–55 as though fully set forth herein.

57. An actual controversy exists between Plaintiff and Defendant concerning the scope of insurance coverage under Businessowners Policy No. BP50562.

58. Plaintiff contends that the Policy covers losses arising from the March 27, 2025 water event, including damage to business personal property, fixtures, and tenant improvements, necessary mitigation and remediation costs, Business Income and Extra Expense losses sustained during the interruption of operations, and liability for damage to premises rented to Plaintiff in response to landlord demands.

59. Defendant disputes these coverages and has denied or refused to pay for most of Plaintiff's claimed losses, limiting its payment to a partial business income amount while rejecting coverage for all other covered losses.

60. Defendant's denials rely on narrow readings of the Policy that disregard its express provisions and Plaintiff's reasonable expectations of coverage.

61. As a result, Plaintiff has incurred unreimbursed costs exceeding $46,229.84, has suffered lost income, and remains exposed to landlord claims that the Policy was purchased to cover.

62. Plaintiff has fully complied with the Policy and tendered all necessary documentation in support of its claim, yet Defendant continues to deny its contractual obligations under the Policy.

63. Accordingly, a present and justiciable controversy exists, and judicial intervention is required.

64. Plaintiff is entitled to declaratory judgment of this Court in fixing and determining the rights and obligations of the parties under the Policy and interpreting and resolving the disputed issue under and pursuant to the Policy.

## SECOND CLAIM FOR RELIEF
(Breach of Insurance Contract)

65. Plaintiffs incorporate paragraphs 1 through 64 and the allegations contained therein via reference.

66. The Policy is a contract between Plaintiff and Defendant.

67. Plaintiff, as the named insured, has standing to assert the claims made herein by virtue of the terms and provisions of the Policy.

6

68.  Plaintiff has performed or was excused from performing any further obligations under the Policy.

69.  Defendant has breached the Policy by, among other things, denying or limiting coverage under the Policy in such a fashion as to prevent Plaintiff from receiving the full benefits to which it is entitled under the Policy.

70.  Defendant should be estopped from further denial of insurance benefits under the terms of the Policy because of its conduct and, among other things, failing to properly or adequately reserve its rights; failing to adequately or properly investigate Plaintiff's claims; failing to pay for damages under the terms and provisions of the Policy where coverage was clear; and by failing to make timely or adequate payments under the terms of the Policy.

71.  Instead, the Defendant, unreasonably denied payments required under the Policy or to provide the benefits to which the Plaintiff was entitled under the Policy.

72.  That as a direct and proximate result of the Defendants' breach of the Policy, the Plaintiff has suffered damages in an amount to be proven at trial including, but not limited to, the amounts of any denied claim, resulting damages from the denial, annoyance, inconvenience, loss of use, attorney's fees, costs, and damages that should have been covered under the terms of the Policy.

### THIRD CLAIM FOR RELIEF
(Common Law Bad Faith)

73.  Plaintiff incorporates paragraphs 1 through 72 and the allegations contained therein via reference.

74.  Pursuant to the terms and provisions of C.R.S. § 10-1-101(2), the Policy is a contract providing payment of benefits when a loss has occurred as described in the Policy and as determined under the substantive law under the state of Colorado. Therefore, the Policy is an insurance policy pursuant to and consistent with the provisions of C.R.S. § 10-10-102.

75.  As a direct result of Defendant's denial and failure to pay covered benefits, Plaintiff has incurred unreimbursed mitigation and remediation expenses exceeding $46,229.84, has lost business income, and has been exposed to potential liability from its landlord.

76.  Plaintiff has also suffered annoyance, inconvenience, and disruption of its business operations.

77.  In procuring the Policy, Plaintiff provided Defendant and its agent with its prior policy and lease requirements, but Defendant unreasonably issued materially different coverage than what had been represented.

78.  Defendant acted unreasonably in denying and delaying payment of Plaintiff's claim by disregarding documentation of covered expenses, refusing to honor applicable coverages, and

7

prematurely closing the claim file.

79. Defendant knew, or recklessly disregarded the fact, that Plaintiff supplied Defendant and its agent with the prior policy and lease requirements, yet Defendant still issued coverage that unreasonably differed from the coverage it had represented to Plaintiff.

80. Defendant knew, or recklessly disregarded the fact, that its coverage position was unreasonable by selectively quoting Policy provisions while omitting those favorable to coverage, ignoring Plaintiff's repeated submissions of evidence, and adopting interpretations contrary to Colorado law requiring coverage to be construed consistent with its plain meaning and in favor of the insured.

81. Defendant's unreasonable conduct was the direct and proximate cause of Plaintiff's damages.

82. Had Defendant acted reasonably and honored the Policy, Plaintiff would not have been forced to absorb tens of thousands of dollars in out-of-pocket remediation costs, lost business income, and exposure to landlord claims.

83. Accordingly, Defendant breached its duty of good faith and fair dealing, and Plaintiff is entitled to recover all damages proximately caused by Defendant's conduct in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(Statutory Bad Faith)

84. Plaintiff incorporates paragraphs 1 through 83, and the allegations contained therein via reference.

85. The Plaintiff falls within the category of persons protected and for which the provisions C.R.S. §§ 10-3-1115 and 1116 were intended to protect.

86. The Plaintiff is a 'first party claimant' within the meaning and for the purposes of C.R.S. §§ 10-3-1115 and 1116.

87. In procuring the Policy, Plaintiff provided Defendant and its agent with its prior policy and lease requirements, but Defendant issued materially different coverage than what had been represented.

88. Defendant, by its conduct, wrongfully and unreasonably delayed or denied payment of a benefit for the claims that were made by Plaintiff under the terms and provisions of the Policy.

89. Plaintiff has suffered damages as a direct and proximate result of the unreasonable conduct of the Defendant.

90.     In addition to any other damages or relief available to the Plaintiff, the Plaintiff is entitled to recover damages as set forth by C.R.S. § 10-3-1116 in an amount to be proven at trial, including two times the amount of benefits owed under the terms of the Policy, and such other relief as is available under the terms and provisions of the Policy, together with any natural and probable damages caused by the conduct of the Defendant.

91.     In addition to any other damages or relief available to the Plaintiff, the Plaintiff is entitled to recover its costs and attorney's fees pursuant to C.R.S. § 10-3-1116.

## PRAYER FOR RELIEF

A.      Plaintiff seeks a declaratory judgment of this Court fixing and determining the rights and obligations of the parties under the Policy and interpreting and resolving the issues under and pursuant to the Policy;

B.      Plaintiff seeks damages for breach of contract in an amount to be proven at trial including, but not limited to, the amounts of any underlying claim, annoyance, inconvenience, loss of use, together with any natural and probable damages caused by the conduct of Defendant;

C.      Plaintiff seeks to recover damages in an amount to be proven at trial for Defendant's breach of Colorado's Common Law Good-Faith obligations owed to Plaintiff;

D.      Plaintiff seeks to recover damages as set forth by C.R.S. § 10-3-1116 in an amount to be proven at trial, under the terms of the Policy, and two times the covered benefit of that amount as awardable under Colorado law;

E.      For all other costs, expenses, and attorney's fees as allowed by law or contract;

F.      For pre- and post-judgment interest as allowed by law; and

G.      For such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY OF SIX ON ALL ISSUES AND ALL CLAIMS.**

Dated this 18th day of September, 2025.

Respectfully submitted,

McCONAUGHY & SARKISSIAN
Professional Corporation

SIGNATURE ON FILE WITH MCCONAUGHY & SARKISSIAN, P.C.

By: /s/ *Tyler M. Campbell*
        Tyler M. Campbell, #51512

9